IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **RANDOL THOMAS,** : | CIVIL ACTION NO. 1:23-CV-283 |
| : | |
| Plaintiff : | (Judge Conner) |
| : | |
| v. : | |
| : | |
| **SAN DIEGO SIGN COMPANY, INC.,** : | |
| **d/b/a WS DISPLAY,** : | |
| : | |
| Defendant : | |

# MEMORANDUM

Plaintiff Randol Thomas brings claims of employment discrimination against a prospective employer, San Diego Sign Company, Inc., pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* and 42 U.S.C. § 1981. San Diego Sign moves for summary judgment. We will deny the motion.

## I.   Factual Background & Procedural History[1]

San Diego Sign is a California corporation that specializes in wholesale portable trade show displays, banner stands, and large format digital printing. (See Doc. 20 ¶ 1). It employs over 100 people across its California and Pennsylvania

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the movant's statement and identifying genuine issues to be tried. See id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 20, 24). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

locations. (See id.) Thomas, who identifies as Black, (see Doc. 24 ¶ 18; see also Doc. 21-1, Thomas Dep. 60:3), applied for a position as a print operator associate at San Diego Sign's Carlisle, Pennsylvania location but was rejected without an interview, (see Doc. 20 ¶¶ 16, 18, 27).

San Diego Sign posted the position to which Thomas applied on Indeed.com[2] on February 25, 2022. (See id. ¶¶ 16, 18). The advertisement listed minimum qualifications, including, among other requirements, "one year of factory-related experience." (See id. ¶ 17). Plant manager Zachary Miller, who reviewed every application and decided which candidates to interview, was the only person at the Carlisle location with access to the company's Indeed account. (See id. ¶¶ 2-3, 8-9). Candidates applied by submitting a resume; their names would then appear on an interactive dashboard where Miller could review resumes by clicking on applicants' names. (See id. ¶¶ 4, 7). San Diego Sign did not subscribe to Indeed's premium service, so Miller could not access applicants' Indeed profiles, some of which contained racial demographic information. (See id. ¶¶ 5-6). Miller forwarded the names of candidates selected for interviews to his administrative assistant, Hazel Thompson, for scheduling; Miller then referred successful candidates to human resources, which verified references, extended conditional offers, and performed background checks. (See id. ¶¶ 10, 12-13).

---

[2] Indeed provides job applicants free access to its website, where they can research companies, search job postings, and post resumes. (See Doc. 20 at 2 n.1).

Thomas knew four people who worked for San Diego Sign at the time he applied: David Strayer, Kenneth Fourlas, Alden Myers, and Marshall Woods. (See id. ¶¶ 18, 47-52). Each is white. (See Doc. 21-17, Strayer Dep. 5:17-18; Doc. 21-18, Fourlas Dep. 13:1-2; Doc. 21-19, Myers Dep. 13:12-13; Doc. 21-20, Woods Dep. 6:15-16). Fourlas and Woods worked as print operator associates, Strayer was the print lead, and Myers was a warehouse associate—all non-management positions. (See Doc. 20 ¶¶ 54-55). Thomas considered those four men his "buddies"; they would spend time together on weekends, skateboard, watch sports, meet at each other's homes or at bars or restaurants, and do other "things typical buddies do." (See id. ¶¶ 48-52). Strayer, Fourlas, and Woods thought Thomas was overqualified for the print operator associate position, (see id. ¶ 53), though they encouraged him to apply anyway, (see Doc. 24 ¶ 18 (citing Thomas Dep. 7:3-19)).

As to qualifications, the parties dispute whether Strayer, Fourlas, and another employee, John Sadesky, had the required year of factory-related experience when San Diego Sign hired each of them for the print operator associate role to which Thomas applied. (Compare Doc. 20 ¶¶ 15, 56-57, with Doc. 24 ¶¶ 15, 56-57). The company hired Sadesky after Miller's assistant, Hazel Thompson, recommended him in October 2021.[3] (See Doc. 24-2, Thompson Dep. 4:8-15; 21:7-23:2). Sadesky's application described over 16-months' experience operating industrial machinery; over a years' experience as an EMT; three years' experience

---

[3] Thompson later married Sadesky and took his surname. (See Doc. 20 at n.2). We refer to Thompson by her maiden name for simplicity.

as a security guard; and a few months' experience as a driver. (See Doc. 24-3, Miller Dep. at 3). Neither party submitted applications or resumes for Strayer or Fourlas. Fourlas, however, testified to having three years' experience in a warehouse and experience as a cook, but no factory experience. (See Fourlas Dep. 8:4-15, 64:11-18, 64:25-65:3). In addition, Fourlas stated that he "didn't have any experience when [he] started [at San Diego Sign]." (See id. at 64:25-65:3). Strayer, the print lead, had experience in restaurants; six years' experience as a delivery driver; and three years' experience in a warehouse. (See Strayer Dep. 6:14-7:23). Strayer also claimed to have "started [at San Diego Sign] with no experience" and that the company both "took a chance" on him and was "not against hiring somebody without [experience]." (See id. at 44:5-19).

    Thomas applied to the print operator associate position on March 10, 2022, by uploading his resume to Indeed. (See Doc. 20 ¶ 18). His resume identified the following education and experience: Thomas graduated from Millersville University in 2008 with a B.S. in speech communications (with a concentration in public relations) and a minor in English writing. (See id. ¶ 19). He then held several office jobs. (See id. ¶¶ 20-24). From 2013 to 2016, he was the director of student recruitment, enrollment, and retention at the Art Academy Cyber Charter School in Philadelphia. (See id. ¶ 20(a)). Then he was the assistant director of admissions for the Art Institute of Philadelphia from 2016 until 2018, after which he was the community relations manager for Oak Street Health in Philadelphia from June 2018 until January 2019. (See id. ¶ 20(b-c)). He subsequently became the director of corporate outreach for Emerge Education in Camp Hill, Pennsylvania. (See id.

4

¶ 20(d)). Emerge Education terminated Thomas in December 2019 for failure to meet sales goals, and Thomas remained unemployed until February 2021. (See id. ¶ 21). Thomas was most recently an enrollment advisor for Noodle Partners, which builds and sells online educational programs for colleges, from February 2021 until December 2021, when Noodle fired Thomas for not meeting sales quotas. (See id. ¶¶ 22-24).[4]

There is conflicting evidence regarding whether Strayer or Fourlas recommended Thomas to Miller while Thomas's application was pending. Strayer and Fourlas testified that they did. (See Strayer Dep. 23:1-25:15; see also Fourlas Dep. 17:1-18:9). Miller, for his part, testified that he did not recall Strayer mentioning Thomas, and flatly denied that Fourlas ever spoke to him about Thomas's application. (See Miller Dep. 50:2-51:21). In any event, Miller reviewed Thomas's resume, and Indeed sent Thomas an automated message confirming the same on March 13, 2022. (See Doc. 20 ¶¶ 25-26). Indeed sent Thomas another automated message the next day stating that San Diego Sign rejected his application. (See id. ¶ 28).

San Diego Sign instead hired Tyler Christman, a white man with an associate degree in machine tool and computer aided manufacturing from Thaddeus Stevens College of Technology and work experience as a machine operator. (See id. ¶¶ 32-

---

[4] The contents of the resume Thomas submitted are undisputed; however, Thomas testified to having labor experience that he omitted from his resume for length. (See Doc. 24 ¶ 27 (citing Thomas Dep. 68:20-69:7)). There is no record evidence from which a jury may reasonably infer that Miller knew about this omitted experience.

5

35). Christman's tenure with San Diego Sign was short-lived; the company hired him on June 13, 2022, but terminated his employment less than a month later. (See id. ¶¶ 32, 36). It then re-posted the print operator associate position to Indeed on August 31, 2022, and ended up hiring two people. (See id. ¶¶ 37, 39-44).[5] The first was Jamie Griffin, a Black man with an associate degree in welding and computer numerical control machining from Harrisburg Area Community College and experience as a warehouse worker, line cook, welder, and press operator. (See id. ¶¶ 39-41). The second was Joseph Thomas, a white high-school graduate with experience as a machine operator, quality control inspector, and production worker. (See id. ¶¶ 42-44).

Thomas filed his complaint initiating this matter in February 2023, (see Doc. 1), which he subsequently amended to remove putative class allegations, (see Doc. 13). He advances a claim of color- and race-based discrimination under Title VII (Count I), and a claim pursuant to Section 1981 for violation of his equal right to contract (Count II). San Diego Sign now moves for summary judgment on both counts. The motion is fully briefed and ripe for disposition.

## II.   Legal Standards

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the nonmoving party to come forth with "affirmative evidence, beyond

---

[5] Thomas did not apply to the new posting. (See Doc. 20 ¶ 38).

the allegations of the pleadings," in support of its right to relief. See Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non[]moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the nonmoving party on the claims. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

**III.   Discussion**

Thomas relies only on a disparate treatment theory of liability, (see Doc. 25 at 5-11), and must therefore demonstrate intentional discrimination, see Ricci v. DeStefano, 557 U.S. 557, 577 (2009) (explaining that Title VII prohibits both intentional discrimination, *i.e.*, disparate treatment, and practices that are not intended to discriminate but nevertheless have a disparate impact on those with protected characteristics); see also NAACP v. N. Hudson Reg'l Fire & Rescue, 665 F.3d 464 (3d Cir. 2011). He may do so by relying on either direct or circumstantial evidence. Direct evidence is "overt or explicit evidence which directly reflects discriminatory bias by a decision maker," *i.e.*, the proverbial "'smoking gun.'" Ke v. Drexel Univ., No. 11-CV-6708, 2015 WL 5316492, at *12 (E.D. Pa. Sept. 4, 2015) (quoting Armbruster v. Unisys Corp., 32 F.3d 768, 778-79 (3d Cir. 1994), abrogation on other grounds recognized in Showalter v. Univ. of Pittsburgh Med. Ctr., 190 F.3d

7

231, 235-36 (3d Cir. 1999)), aff'd, 645 F. App'x 161 (3d Cir. 2016) (nonprecedential). This case involves only circumstantial evidence of discrimination. As a result, we apply the burden-shifting framework outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), the first step of which requires the plaintiff to establish his *prima facie* case. See McDonnell Douglas, 411 U.S. at 802.[6]

A plaintiff makes out a *prima facie* case of discriminatory failure to hire under Title VII by presenting sufficient evidence that (1) he is a member of a protected class, (2) he was qualified for his position, (3) he was rejected despite his qualifications, and (4) "'that, after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications.'" See Fuentes v. Perskie, 32 F.3d 759, 763 (3d Cir. 1994) (quoting McDonnell Douglas, 411 U.S. at 802). If the plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a "'legitimate, nondiscriminatory reason'" for its adverse employment decision. See id. (quoting McDonnell Douglas, 411 U.S. at 802). The defendant's burden at this rebuttal stage is "'relatively light'"; it is a burden of production only. See Burton v. Teleflex, Inc., 707 F.3d 417, 426 (3d Cir. 2013) (quoting Tomasso v. Boeing Co., 445 F.3d 702, 707 (3d Cir. 2006)).

---

[6] We analyze Thomas's Title VII and Section 1981 claims together because the same framework governs both. See Anderson v. Wachovia Mortg. Co., 621 F.3d 261, 267-68 (3d Cir. 2010) (citations omitted) (noting that substantive elements of discrimination claims under Title VII and Section 1981 are "generally identical" and that McDonnell Douglas framework applies to both where plaintiff relies on circumstantial evidence); see also Jones v. Sch. Dist. of Phila., 198 F.3d 403, 410-15 (3d Cir. 1999) (analyzing Title VII and Section 1981 claims using McDonnell Douglas framework).

Assuming the employer meets its burden, the plaintiff then must show by a preponderance of the evidence that the employer's stated reasons were mere pretext for discrimination. See Fuentes, 32 F.3d at 763.

San Diego Sign argues both that Thomas has not set forth a *prima facie* case of discrimination and, in the alternative, that he cannot demonstrate that the company's explanation for not hiring him—lack of factory-related experience—was pretext for discrimination. (See Doc. 22 at 8-21). We address each argument *seriatim*.

### A.     *Prima Facie* Case

San Diego Sign asserts that Thomas presents no evidence that he was qualified for the print operator associate position.[7] (See Doc. 22 at 8-12). A plaintiff in a failure-to-hire case under Title VII and Section 1981 must demonstrate that he was "sufficiently qualified to be among those persons from whom a selection, to some extent discretionary, would be made." Ezold v. Wolf, Block, Schorr & Solis-Cohen, 983 F.2d 509, 523 (3d Cir. 1992), as amended (Feb. 1, 1993) (quotation omitted). It is undisputed that the resume Thomas uploaded to Indeed—the only document reflecting Thomas's work history to which Miller had access—listed no such experience. (See Doc. 20 ¶¶ 18-24). While that typically might end the inquiry,

---

[7] San Diego Sign presents its argument slightly differently by stating that Thomas does not meet the second prong of a *prima facie* case, that he was qualified, and only "partially meets" the third prong, that he was rejected despite being qualified. (See Doc. 22 at 10). We address only the former argument because San Diego Sign undisputedly rejected Thomas's application. (See generally Docs. 20, 24). The more formal framing is distinct but no different from our own.

Thomas adduced testimony from which a reasonably juror could find inconsistent—and discriminatory—application of the factory-related-experience requirement at San Diego Sign's Carlisle location.

Thomas has presented evidence of a discriminatory pattern or practice, namely that the company waived the factory-experience requirement for white applicants referred by other San Diego Sign employees, including Strayer, Fourlas, and Sadesky, but not for similarly situated Black applicants such as Thomas. (See Strayer Dep. 44:5-19; Fourlas Dep. 8:4-13, 64:11-18, 64:25-65:3; Thompson Dep. 4:8-15, 21:7-25). The record is rife with material interpretive and factual disputes regarding these individuals' qualifications for the print operator associate position and San Diego Sign's fidelity to its own stated requirements. The truth and significance of those contested issues is for a jury to resolve. That is sufficient to withstand summary judgment.

### B.   Pretext

San Diego Sign next argues that Thomas has not met his burden of advancing evidence to show that its proffered reason for not hiring him—lack of factory-related experience—is pretextual. (See Doc. 22 at 13-21). To demonstrate pretext and defeat summary judgment, a plaintiff must identify evidence that would allow the factfinder to "'(1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" See Shaner v. Synthes, 204 F.3d 494, 501 (3d Cir. 2000) (quoting Fuentes, 32 F.3d at 764; citing Sheridan v. E.I. DuPont de Nemours & Co., 100 F.3d 1061, 1067 (3d Cir. 1996) (*en*

10

*banc*)). The plaintiff may call attention to "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons.'" See <u>Willis v. UPMC Child.'s Hosp. of Pittsburgh</u>, 808 F.3d 638, 644 (3d Cir. 2015) (quoting <u>Fuentes</u>, 32 F.3d at 765). "'[P]roof of a discriminatory atmosphere may be relevant in proving pretext'" because it contextualizes an employer's decision-making process. See <u>Creely v. Genesis Health Ventures, Inc.</u>, 184 F. App'x 197, 200 (3d Cir. 2006) (nonprecedential) (quoting <u>Ezold</u>, 983 F.2d at 546) (alteration in original). But we accord little weight to "[s]tray remarks by non-decisionmakers," especially if those remarks are made "temporally remote from the date of decision." See <u>Ezold</u>, 983 F.2d at 545 (citing, *inter alia*, <u>Price Waterhouse v. Hopkins</u>, 490 U.S. 228, 277 (1989) (O'Connor, J., concurring)).

As previously discussed, Thomas has adduced evidence from which a reasonable jury could find that San Diego Sign maintained a *de jure* policy of waiving the factory-related-experience requirement for white persons recommended by current employees and refused to extend that implicit waiver to Black applicants like himself. (<u>See</u> Doc. 24 ¶¶ 15, 56-57). The uncontroverted record evidence—viewed in a light most favorable to Thomas—reveals sufficient "'weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions'" in San Diego Sign's qualifications-based explanation for its hiring decisions in this case. See <u>Willis</u>, 808 F.3d at 644 (quoting <u>Fuentes</u>, 32 F.3d at 764). Thomas has demonstrated disputes of material fact regarding pretext.

**IV.** **Conclusion**

We will deny San Diego Sign's motion for summary judgment. An appropriate order shall issue.

/S/ CHRISTOPHER C. CONNER
Christopher C. Conner
United States District Judge
Middle District of Pennsylvania

Dated:   January 6, 2025